We're happy to hear argument in our first case, No. 144418, United States v. Wilson. Mr. Wright.  This is a case that concerns two issues. The first is the Rule 11c issues. The court should vacate the trial court's judgment and allow the defendant to withdraw his guilty plea. Do you represent him in anything in the district court? No, Your Honor. So you're the third lawyer? Yes, sir. So he had a lawyer, and he made the plea agreement, and then he went in for a plea hearing, and he reneged. And then they continued it for two weeks. It lasted for four months, and they got a new lawyer, right? That's right, Your Honor. He went back for the same judge, and he entered a plea pursuant to the plea agreement or not? He entered a plea pursuant to the plea agreement. That's correct. It's clear he did that? Yes, sir. The original plea agreement? The plea agreement wasn't changed? This was the original plea agreement, so far as I understand, yes. Well, was it the original plea agreement or not? It was the original plea agreement. All right, but there's no record of the second of the plea proceedings, right? That's right. They lost the record of the plea proceedings, which there's no issue of. You don't raise an issue about that. No, but we did submit a statement of what happened here. I know. Well, did you talk to anybody that was there?  I read the statement. I think the statement is – I would rather have had the transcript. Probably you would have rather had the transcript, but I take it that if your client had anything that would assist his case, you would have tried to get it in this agreed statement. Is that right? If there was anything additional to add, yes, Your Honor. Well, there had to be something additional to add because I've never seen a plea statement that took three sentences. So there's got to have been something else. Well, there was a difference of opinion between my client and his counsel. Counsel recalls there being the Rule 11 colloquy. The client does not. I'm sorry. Say that to me again. The counsel recalls that there was a Rule 11 colloquy at the plea. At the second? At the second. Where he pled guilty. Where he pled guilty, correct. But your client says there wasn't. He doesn't recall. He doesn't recall. Well, why did you all stipulate to it then? Well, because, Your Honor, I think we simply do not know what went on at that hearing. Well, that's what you stipulated to. You don't know. Well, but it doesn't really matter. What do you mean it doesn't matter? I mean, he's convicted. And it's the same judge. He's going to the penitentiary based on a guilty plea. We need to know whether it was a guilty plea or not. Well, he's going to the penitentiary based on a guilty plea, but it's a guilty plea before the same judge who had made the statements in the arraignment hearing. And that's a judge that tried to talk him into pleading guilty? We got a transcript of that, and he didn't want to plead guilty. The judge said he should plead guilty and tried to explain to him why he should plead guilty. And he wouldn't get in. Don't you understand your case would be stronger if you have this record and then you have the record of the plea agreement or you have a statement saying my client doesn't believe that this same judge conducted the proper Rule 11 inquiry? Don't you see how that would have all been made your case a lot stronger? Yes, Your Honor. But now we don't have that. No, we don't have it, but we also don't know what happened at that hearing. Well, we do because you stipulated what happened. Well, we've stipulated that the judge made a Rule 11 statement. We don't know what additional comments the judge made. We don't know what happened then. I mean, the next thing you're going to have is a 2255 saying you're ineffective. We're stipulating to the plea proceeding that they didn't have a record for. Well, no, Your Honor, I think the point is that this is the judge who, in the arraignment hearing, made it clear that he was going to sentence this man to life. Really, we do understand that. We've had a bunch of recent cases. We understand the law there. We don't have a case. I haven't found a case where there's a four-month lag. So if you had another district judge here, I think you would likely be out of luck on that argument. You had the same district judge, but you stipulated that it was a proper Rule 11 colloquy. So I don't know exactly where that leaves us, and that's why we're asking you why you did stipulate to that. And what you're saying to us is we don't know what happened, but I don't think that's what the stipulation is. That's kind of where I am. I understand, Your Honor. The stipulation reads as it is because we have a difference between – and it recites that there's a difference between – Where's the JA side on that stipulation? Where is it? Your Honor, the stipulation is in the Joint Appendix at the very end, at 103. At the very end of 103, it states, Appellant's appointed trial counsel present at hearing recalls that the appellant acknowledged he understood the terms of the plea agreement appeal waiver. However, appellant does not recall being informed of or acknowledging that he understood the terms of the plea agreement. So the statement of proceedings – Well, the next sentence, though, is the court asked if he was guilty of the four counts. Appellant responded that he was guilty of these charges. Yes, Your Honor. We're not disputing that he pled guilty at that point. The issue is the role the court played in that decision and that does this four-month difference make a difference? He obviously changed his plea from not guilty to guilty. And in other cases, the fact that there was a proper Rule 11 colloquy is not enough to say that the court didn't influence that decision. I mean, the government has stipulated that, yes, this violated Rule 11. But, I mean, the statements that Judge Boyle made were improper. Well, the earlier statements, they don't stipulate that there was a violation of Rule 11 at the – There has to be a Rule 11, proper Rule 11 proceeding at this plea proceeding. The second. And they don't stipulate that's improper, right? No, Your Honor. They do. They say we have an easy case here. What happened earlier was wrong. Correct. But the question is – Did anybody ask for a second – a new judge for these proceedings? They got a new lawyer, waited four months, but went back for the same judge. That's right. He had the original lawyer. Talks broke down between the lawyer and client. Right. And then when the new lawyer came in – That was because the judge and the lawyer both tried to talk him into pleading guilty and he wouldn't plead guilty. But then the lawyer, his own lawyer, then they let go and brought in another lawyer to try another plea agreement, but went back for the same judge. And we don't have the – it didn't make a record. It didn't, but he signed this plea agreement the day before. He signed it on February – This amended statement of what happened when the transcript wasn't available was signed only by you. That's right. It wasn't signed by the defendant? Is there something – is there anything signed by the defendant? You said the day before he signed the plea agreement. No, the defendant signed the plea agreement. He signed the plea agreement, but did he sign anything for this record confirming that everything was hunky-dory at the plea proceedings? No, he did not. Did he – you were beginning to say that he signed the plea agreement the day – is it the plea agreement that we have in front of us now that he signed the day before this? The day before the second – the day before the Rule 11. The unknown Rule 11. That's right. The not transcribed Rule 11. The not transcribed Rule 11. Okay, did you represent him at that point? No, I did not. We came on as appellate counsel. Yeah. Now, where is that lawyer? Did he sign anything? Did he make an affidavit? No. Did the U.S. attorney make an affidavit? The U.S. attorney did not make an affidavit. Did the judge make an affidavit? No, sir. But there is a procedure for doing this, as I understand. At least I understood from your briefs. When the transcription breaks down, you tell me. Well, when the transcription breaks down, you file an amended statement, which the U.S. attorney concurred with. So there was no need to make – the court then approved it. But you just pointed to me that they don't agree on it. I mean, there's a critical element, apparently, that the two lawyers agreed to, but your client didn't. Well, the two lawyers agreed to it. The one you cited, page 103 and 104, is signed by you, and you weren't even there. That's right, Your Honor. And you just told me that there's nothing signed by the U.S. attorney and the defense lawyer or the judge that relates what happened at the plea proceeding where there's no record. That's right, but the U.S. attorney did not object to it. There's no supplement to the record under oath as to what happened. No, Your Honor, but it's not required under 10C. No. And this was not objected to by the U.S. attorney. Well, can I ask you something? It looks like you're quoting something here, you know, when you look at your statement, the thing that you filed. It's indent, single space. It's usually what – Right. So what is it quoted? It is not a quotation, Your Honor. Okay. It's blocked like a quotation. Correct. Did you write it up or did somebody write it up and you signed it? It was written up. My associate wrote this up at my direction. Okay. Do we even know if it was served on your client and the government? Yes, it was served on my client and the government. My client reviewed this before it was filed. Okay. So tell me again about what this – this procedure's in the rules, is that right? Yes, Your Honor. Or is it a local rule? No, it's in the rules of the appellate procedure. And it says that if the transcription business isn't available, the parties can or must or what? The parties can file a statement of proceedings. Uh-huh. And the parties agreed upon this statement of proceedings. This party agreed upon – They agreed to disagree. But they didn't agree because they signed it. I had one in another case that the lawyers both signed and the judge signed. Yeah. Attesting that it was true and accurate and that's exactly what happened. Well, Your Honor, there's also – if you take a look at page 101, there's an order signed by the judge allowing the entry of this. Pursuant to Rule 10C, defendant served a statement of the proceedings. And that's – is that what we have there on page 103? Yes, Your Honor, it's what you have on page 103. The appellees did not serve any objections. Therefore, the court approves the statement. So the judge has signed off on it. The U.S. attorney has signed off on it. We have signed off on it. Well, the U.S. attorney didn't sign off. He just said there's no objections or proposed amendments according to the judge. Right. But the U.S. attorney never signed anything. The U.S. attorney didn't sign anything. No, sir, but the U.S. attorney didn't sign anything. And the defendant didn't sign anything. No, Your Honor. But you tell us the defendant says he wasn't advised of his – He doesn't remember. Doesn't remember. The defendant does not remember. And you put that in the statement, so that's there. That is there, that the defendant does not remember. The attorney who was representing him recalled that there was a proper rule of ecology. But he doesn't say anything, and there's nothing he signed here at all. No, Your Honor. Did his counsel then ask to be before another judge? No, Your Honor. At no point did his counsel ask for another judge. Did he ask for another judge? No, he appealed the guilty plea. I understand that. But you've chatted with your client. Yes, Your Honor. Back in the day, remember when he told you that he didn't remember signing this, did he say, and I wanted another judge too? No, Your Honor. He did not request another judge. If this were to – if the court were to send it down, obviously it would go back in front of another judge. But the – and I know that we're focused on this issue of what happened at the hearing where we don't know what happened. But, Your Honor, it matters because – Yes, Your Honor. But this records the recollection of those who were there. We were counsel at this point. Well, let me quote him. It's all hearsay to you. And you're the only one signed anything. Yes, Your Honor. But I'm the one who is permitted to file a statement with the court under the rules. Okay. I think we understand the facts of your case. Tell me the case that you think is best, is closest to yours, that would help you with what I think is the serious problem you have, which is the four-month time. Your Honor, I think Sonia. And I can see your reaction to that. But the point of the four-month gap is that the court talks about temporal proximity as something that is dispositive, that if in a case where a defendant is influenced by the judge and immediately comes back from lunch and changes their plea, it's clear that there is a relation. In this case, the lack of temporal proximity is not dispositive of the judge's lack of influence. The judge had a substantial impact on why he decided to plea. Well, you know, we all go back to the Supreme Court case, and the Supreme Court seemed to think it was less than four months there that the amount of time did dissipate things. I mean, it vacated and remanded for redetermination on this issue, but it did seem to say that in its opinion, and that's why I think we have to be guided by that. Okay. We've been upon you, so I'll give you two more minutes. Thank you, Your Honor. The important thing about time is that in this case, this is a judge whose statements were severe. I mean, the judge was telling this person that he would spend 100 years in prison. So we've got statements that clearly influence, and the court's inquiry is did those statements have a substantial effect on his decision? Going back before the same judge would get the same decision. The state has made a point that the content of the plea agreement itself is somehow dispositive, that the fact that he had such a great deal in the end was the reason why he had to have signed it. Something the courts have looked to. Well, yes, Your Honor, but that is not at this point. That's why we're here. He would like to roll the dice in front of another judge. Well, maybe he should have said that back in the day. Let me ask you this. What if six months had gone by between? Well, an important thing about the time is that really there are two dates. There was two weeks, and that two weeks was the time that the court gave for counsel to file a motion to withdraw. Then the court set a four-month date. I thought he called that a cooling-off period. That's right, Your Honor. He called it a cooling-off period. Not to let counsel withdraw, he called it a cooling-off period. Yes. Well, he allowed counsel to file a motion within two weeks if they could not. But what you're getting at is that anything over two weeks was because of the court's schedule, not because he delayed. Correct. I understand that, but I give you the same hypotheticals, same thing, except it's six months. Do we still have to reverse? There's got to be a time when it dissipates. Well, if the six months are because the court set six months as the next date, there was no other time for the person to get before the court, then possibly. A year? It is unlikely, I think, that a year would go by without there being an opportunity to present to the court. Four months has been found your way? I haven't. Well, but time in itself is not enough, Your Honor. No, it's not, but it is a factor. It is a factor, but it's a factor that he goes in front of the same judge. Right, but there are these other cases where you go in front of the same judge and you have equally strenuous discussion by the judge, but the time is the next day or three days later or two weeks later even, but not four months. But all that's happened in those four months is a change in counsel, and this was not a date he could control. He didn't have the ability to go before the judge sooner to change his plea. In my experience, the defendant usually doesn't have the date to control. What I'd like to have seen is some explanation of why he changed his mind. Well, and that's not in the record. I know it's not. Well, and the only thing that's in the record. He said, I like that plea agreement that I didn't like, and I've changed my mind. I've done a 180. I want to plead guilty to the plea deal that I told the judge I didn't want to plead guilty to. That's why we wondered if it was the same plea deal. Yes, it was. It was the same plea deal, but the only thing that's happened between the time he rejected it and the time he accepted it is the judge berating him. It's what? The judge berating him. The judge berated him at first. He didn't accept it. But I think he probably told the judge, I've changed my mind. I think it's the best deal I can get, and I want to do it. But nothing here says that. And he doesn't say that? He doesn't sign off on anything? And the prosecutor doesn't sign off on anything? And the other lawyer, your predecessor, doesn't sign off on anything? The judge doesn't sign off on anything? And that's not the only thing that happened. There was a four-month cooling-off period, and he had new counsel, and new counsel is important. He had the benefit of new counsel, who likely told him this is a good deal, because it was. Your Honor, we simply don't know what new counsel said. We don't know what new counsel said, because you don't have a record on that. But they didn't just sit there, presumably, like a bump on a log. They counseled him. That's the difference. And new counsel needs to get up to speed, and new counsel may also have been aware of what had happened at the prior arraignment hearing. It might have, but we don't know. We don't know either way, Your Honor. All right. We'll now hector the government for a while. Thank you, Your Honor. The prosecutor will know all about it. He was there with all this stuff, I bet you. But he's not under oath either. We don't have anybody that's testified to anything. He made us a record. Good morning. May it please the Court. My name is Phil Rubin, and I represent the United States. And I hate to start out by disappointing the Court, but I was not the trial counsel. So I do hate to start out on that disappointing note. Don't you think that there are lots of cases, and the United States Attorney's Office is big, and there's turnover, but don't you think it would be, particularly in this case, helpful to have had in this courtroom somebody who actually was there? On the one hand, I will tell you, I have talked and met with the trial prosecutor to make sure that I understand things. But since we can't go outside the record, I guess there's some extent to which I'm not sure it would be helpful if you had him up here because he would be confined to this record, unless the Court asked him to go outside of it. If that's the position, and I think that's probably right, then why don't we have to vacate and remand since nobody knows anything? I think we know a few things. Was it the same prosecutor at both of these so-called plea hearings? It was the same prosecutor throughout the trial phase, all the way through. Well, there wasn't any trial. Through his guilty, his final guilty. There was an aborted plea hearing, and then there was a real plea hearing. Which is not recorded. Which is no record of four months later, right? That's right, and it was the same prosecutor. It was the same prosecutor. And through Senate. And it was the same plea agreement. This plea agreement was never sweetened? Answer that. Was its plea agreement sweetened? I want to answer that. The original plea agreement is not in the record. Well, you can kind of piece it together from what was said. That's what I would like to do if the Court will approve it. Well, but can you get us to the bottom line, and then you feel free to do that? Is it the same plea agreement? It is my opinion that it is not the same plea agreement. I think you're wrong. He received a slightly better plea agreement, and what I would direct the Court to look at for that, and this is on page 66. But his own lawyer said it was the same plea agreement, so you all can't even agree on that particular aspect of it. Well, I'd like to quote from his lawyer at the Rule 11 hearing, the initial Rule 11 hearing. That's the one that was not a Rule 11 hearing. It's when the judge tried to talk him into pleading guilty, and he said, I don't want to. That's right, Your Honor. It's page 66 of the joint appendix. And in it, Mr. Dysart says, in the interest of clarification, Your Honor, and then he goes on to say what was in the plea agreement. And what he says, and I'm going to not read this whole paragraph here, he says, The plea agreement that we handed up for Your Honor's consideration, which Mr. Wilson has indicated he does not intend to plead guilty to now, has him plead to the two counts and the subsequent information, the conspiracy to commit only the bank robberies and not the convenience store robberies in the 922G, the individual overt acts of the bank robberies themselves in the indictment, and the individual charges related to those individual bank robberies remain as part of the plea agreement. That last sentence is what I'd like to focus on. He says that he's going to plead to the individual bank robberies. In the final plea agreement, he pled to only four of the six bank robberies. He did not plead to all of them. I will acknowledge that is not a crystal clear statement. Well, but I appreciate your candor in telling us that the plea arrangement, the proposed plea arrangement, was sweetened between the two proceedings. So you don't have an agreement until it's consummated. That's right. So what they had at that first proceeding was really nothing. They had a signed plea agreement, but he has the ability to back it. They didn't have a plea agreement because the defendant didn't go along with it. Absolutely. So he rejected it. He rejected it as he might as well have torn it all up. I mean, it might help for historical purposes to have it, but he didn't have a plea agreement until you go through a proper Rule 11 proceeding, and it didn't work. And then you waited four months, got him a new lawyer, and then he pled guilty in the proceedings where we don't have a record, with another lawyer, to something. And you now tell us, well, a little bit different. It appears from the record in front of us, and to say more, I'd have to go outside of it, so I won't. But it appears that it was a little bit better. I don't think that fact is dispositive. I think it's helpful. Would it have made any difference in the sentence at all? I don't think it would have. Wouldn't they have been grouped? I mean, I don't think it would have made any difference at all. I think you're right on that, Your Honor. It might have made him feel better. That might have been why he may have thought he got a better deal. That was exactly what I was going to say, Your Honor, because this defendant at the not a Rule 11 hearing, the initial hearing, he stressed, oh, I can't plead guilty to things I didn't do. So if that made the defendant feel better about not having to plead to all of the counts that maybe he says, I didn't do these two robberies, I'm not going to plead guilty. That wasn't the thing he didn't do. Well, he was, I thought when I read it, he was prepared to plead to things where he had a participation. He just didn't want to plead to the conspiracy because he wasn't part of that. Well, he pled to the conspiracy. He just pled to a different conspiracy in the end. Okay. He wanted to plead to the superseding information, which contained a 371 conspiracy. He doesn't exactly say perfectly on the record where he says, I can only plead guilty to the things I did and I didn't do all these things. So I would say to judge King's point that I think it may be a reasonable inference that this defendant, even though I don't, I agree. I don't think it would have affected his guidelines range. He may have felt better about it. Can I ask you, the United States attorney's office keeps track of what comes out of the fourth circuit. We do. Yes, your Honor. And so, you know, there's been a series of cases like these about the judge interfering with a plea and then getting reversed and having to go before a different judge. It would seem to me that this case would have put a red light to you all. And you would have might, might suggested that we go in front of another judge now. No, I think, I think it's, I think as, as a, instead you'd like to go as close to the line as you can, right? You want to test this to see if it was four months, like and next week you have one that were five months is in four months. Didn't work. Is it cooling off period? Maybe five months. I don't, I don't desire to try to do that. We don't desire to test that your Honor. But I do, I do think we have to recognize that it's a difficult situation to go before a district judge and say that he should not be the district judge on this case anymore. Well, but it's, it's what lawyers have to do. And maybe that would be a blame it all on us. The fourth circuit has these incredible unrealistic rules, but in to be extra careful, I just, that's something I can, I can certainly take back to my office as a private United States of America. And it's a proud thing to stand up and say that, but it carries obligations other than just being sure that some criminal is convicted of the crime. Right? Absolutely. I fully understand that your Honor. What I can say is I think in this particular case, we didn't, we didn't think of that as far as I know from, from speaking with the trial prosecutor, that was known there was this pro because the statement, even the government says, and in other cases they haven't conceded that there was error, but here you do concede that it was there. We do. And frankly, that's when I, when I take this case as an appellate prosecutor and I look at it and I say, there's no reasonable way I could come before this court and say it's not error. And there's not even a way I could come before this court and say it wasn't plain. So the government confessed there here, but what's the area that you confess and recognize today? We recognize that the district court statements at that initial hearing violated rule 11 C one by participating in the plea negotiations. And that, that was plain. How about as to the second, the real plea hearing confess any error there? We do not, or you don't have a record. We don't have a record, but we do not. Why don't you confess error on the lack of a record that you need to, that the record there should be a record before the appellate court that shows whether the defendant complied with, uh, Clint complied with rule 11, whether it was a proper rule. We don't confess error on that because there isn't evidence in the record that there's an error. There's no evidence of anything. There isn't, but the app, where is it? Where's the record of what happened? Your Honor? Unfortunately it was lost. Where, where, where, what, then what do we have to go on? We have the statement that defense counsel, Mr. White. Yes. It was not there. That's right. In, do we have a statement by any of the lawyers that were there only in so much as an informed Mr. White statement? We don't have any statements from any of the lawyers that were there. No, no, no. The judge, I will say this. I did want to point this out. The judge by adopting it. I think it's fair to say we have his order. He, his order. Then I assume he would not issue that order if he thought that was not an accurate summation of the rule 11 hearing. I think, I think that's a reasonable assumption to take from it. So I think the district court adopted that as its statement. And we have a signed order. That means the district court adopted something where both lawyers say that there was the appropriate articulation and the defendant doesn't remember it. I don't, I am not sure where that goes. And neither lawyer has made affidavit that actually did happen. I think, I think, I think if we can take a step back, the, in, when we're looking for an error that say we didn't have the initial colloquy, it was just a case where the defendant comes in and he says, I wasn't properly advised that my rule 11 hearing. And we go and we don't have a transcript and we don't have any record of it. It depends on whose burden it is. The outcome of that case. If it's our burden to prove there was no air, we can't do it. We can't meet it. If it's the defendant's burden to prove there was air, he can't meet it because he can't show it. So if it comes down to that record, I would, I would ask the court to consider that we're on plain error. Right. But see, we have one of my clerks kept talking about last year, atmospherics here. And the atmospherics are this guy is being beat upon by the district judge. And he's, he's the only man in the room standing up for his own rights. Right. And so then he comes back four months later and everybody's made a deal and he doesn't remember it that way, but it's the same district judge. I, you know, I just, again, I, I'm sorry to say this, but I feel that the United States had a burden to, to kind of make, to establish that that's what happened, that it was free and clear. Cause you know, there's this problem. And so I take what you're on are saying then that, that the government, you would want the government in that case to move, to have it moved over to a different judge in those circumstances. Or to have it perfectly clear at the very least make affidavit or what you're saying, that there is a subsequent valid plea hearing for which we have no record. I can absolutely hear what the court is saying on that. And that's something that I will, I will take back the way I talk to my children. I hear what you're saying. No, no, this is not, but I hear what you're saying. This isn't that kind of, I hear what you're saying. It's I really do hear what you're saying. Your honor. What I was looking for is an explanation at the plea hearing of why change these minds. Yeah. I wish we had an explanation. Mr. Wilson. Why did you change your mind from what happened before? Why do you want to plead guilty now? And we don't even have that in the, we don't even have a summary of, you know, we had that your honor. I do. I wish we had a transcript, whatever that transcript would hold. We all wish you had a transcript, but failing the transcripts and we know you can't have the transcript. So it seems to me you would need particularly in light of what happened before a fuller rather than a briefer statement of, I think that that's something I will certainly take back from this. You know, we, we didn't draft it, but we certainly didn't object to it. And therefore that's something, you know, if we have these cases in the future, that's something I think we'll pay more attention to. I think in the, in the trial counsel's defense, I think it perhaps he wasn't fully aware of what these issues would be and the impact of how important that, that that particular point about the rule 11 hearing would ultimately, and if the plea agreement changed, that helps you. We need to, but we need the new plea agreement. No, we, I wish it were, we would have, we need to, we need the new terms spelled out. I'm at rule 11 contemplates that. Or at the very least, it would be helpful if the original plea agreement had been entered into the record, then we could absolutely, but if it was proposed to the agreement, but the, but whatever he pled to is what we'd like to see. What was the plea agreement on the date of the hearing? That there was no record where he entered, where he supposedly entered the plea guilty. He did enter the plea guilty that he's trying to get out from under what he's trying. He's trying to get out from under what happened the day. There's no record. That's right. November is not trying to get out from under anything else. And that's, and that's the part where there's no, there's no plea agreement. There's nothing that he says is why I've changed my mind from the first time around. Where, where we have the record of the judge getting involved, but what we did have, we have the, we have the final plea agreement. Isn't that what he pled to? The final plea agreement that he pled to ultimately was convicted on. Is that J a, but we don't have a record that says, this is what I pled to. This is I'm pleading guilty to this. We don't have any proceedings where he says, I pled guilty to this. Well, he signed it. He signed the first one. We also have the docket your honor, where the plea agreement was entered into the record immediately after the rule 11 hearing, where he entered his guilty plea. And I don't have is how this compares to the other one. And what was said, and even a sense of, as I say, I, if the plea agreement was as short as the statement about the plea agreement, it would have lasted about 35 seconds. I don't think it was the plea agreements. I mean, it's a plea of the plea hearing. I take your point. If I could, and I know we've talked a lot about the important questions of what we don't have, but I would like to talk a little bit with my remaining time about what we do have in this record, because I actually agree with opposing counsel that this court should look at the Sanya case and compare the two, because when the court compares it to Sanya and the spring court has told us, and this court has told us that particular facts and circumstances matter, the district court statements, we agree they were error. We agree that that, that weighs in the defendant's favor, certainly, but there's five different reasons looking at the, at the Sanya case that this case is much different. The first is in Sanya. There was a sudden change of heart. This court recognized at that hearing during the hearing that defendant basically said, okay, I'll think about this. I'll have to reconsider. In this case, judge King, as you mentioned, he, he didn't, he stood up the entire time and refused to accept the plea agreement. So we have no sudden change of heart. Yeah, but Sanya is not our only case. All these cases are a little bit. Sometimes you don't come in with a plea agreement at all. And, and all we have is what factors are more or less important, your honor. And that factor was considered important. The most important was temporal proximity. And here, as you said, judge Motz, it was four months and defense counsel has said a lot about what we, it's not our fault. It was court imposed. And I have a few responses to that. The first is it's true. The defendant didn't move for continuous, but he did get a new attorney. That was what caused it. Yes, the court ordered the delay, but it was inevitable when you have to get a new attorney over the period where the rule 11 hearing is going to be held. You're going to have to delay the rule 11 hearing. I don't know that that that weighs in their favor, but maybe the more important point about that is what we're really looking at is, was the plea voluntary when he entered it and a longer gap of time, whatever the cause may be. An earthquake causes six months to go by before they get around to doing the rule 11. It's still been six months since the district court statements in this case, four months since the district court statements. And this court recognized, and particularly judge Wilkinson's concurrence and Sanya that a longer period of time can attenuate the, the effect of the district court statements. And we absolutely have that here. I have also not found a case where there's been a gap this long in Sanya. Also the court recognized that the plea agreement basically didn't benefit him at all. I haven't been a prosecutor for a super long time, but this is the most beneficial plea agreement I have ever seen. It is not used. Of course we were asking if there had been a change and that would be relevant. And even, even the old one or the new one, the fact that just looking alone, we know that he didn't like the old one, but even, even looking at just the fact that he was able to drop all, all three, nine 24 seat counts, which he had a brandishing. So that was 57 consecutive years of sentencing. In fact, I will, I will say it's extremely uncommon in our office for someone to be able to plead under a plea agreement and get out from under all three. If they have multiple, he gets a, the sentence vacated and remanded. In the end, I, I, it's not this positive. And I would disagree defense because it says that we've acted as though that's dispositive. Sandy says it's an important factor. And so we think it's an important factor. I don't think the strength of the playground is dispositive, but I do think it matters in this case. It weighs. If, if the court is taking a scale and they're trying to decide, is there a, is has defendant shown a reasonable probability that it was the court statements that caused him to plead guilty. The fact that this plea agreement was outstanding. The fact that his friends were all going to testify against him. That weighs in that weighs against believing that it was the district court's decision or the district court statements that went in his favor. Is there only one district judge sitting there? In that city? Yes, but, but it could have, it could have been reassigned to a different district judge that, that certainly would have been just in Raleigh or he sits in Elizabeth city. This was Elizabeth city proceedings. I have to occasionally he sits in Raleigh. So I don't, I don't want to be wrong. He has been the joint appendix thing at Raleigh. It says Raleigh. So he does sometimes sit in Raleigh, but he usually sits in Elizabeth. Right. But it could, but you're convinced that this, this plea agreement we have here is the second plea agreement or that it's signed on February 3rd. I know it's the, it's the final playground because he signed it. The earlier pre-agreement has to be different because it's dated different time. It's not in the record and the early and the hearing where they, you confess error occurred before that. That's that's right. Your honor. And we know the date of this, this because he signed that. It also has the new attorney, which is not the same attorney as the new attorney. That was at the first year. There's got to be two of them. That's right. There are. And the one, unfortunately, it's just not. And you think that they're, they're two different writings. I'd have to go outside the record to speak of it, but I think that the, the, the court, I read, we can answer our questions. I think I beg your pardon. I think we, I think you can go outside the record. The record pre sparks here with your permission. Your honor. I have the original plea agreement. It's right here and it has, may I, what's the date of it? The date of it. It is signed by the parties, not by the judge because it was never approved. It's dated the third day of October, 2013. That was before the initial was October 13. And this one's February 14th. That's right. Okay. And, and you know, the differences, you can look at it and you can tell us our differences. I can tell you the differences. So not just implied, you know, I know there are differences. I know there are differences. That was, that helped you a lot when you were reading the record. See, I was reading the record without an extra document. And I, and I recognize it was a difficult line for me to walk because I know not to other side of the record without your permission. And that's the one that the judge tried to talk him into taking. That's right. And right. And so he did get it and he got a different one. Okay. We know that. And, and as we've acknowledged, it's not a, it's not a massive difference. But part of that is also because he had gotten so much in the initial agreement. Dropping the three, nine, 24 C's, 57. He basically, he would have another, another statement that opposing councils made that I would have to disagree with. I don't think that judge Boyle threatened to give him a life sentence. I think judge Boyle simply recognized he would have gotten a life sentence. What are you looking at? A hundred years or something? And he, and he literally quote, he literally was looking at that. I don't think he said, I'm going to give you life if you don't plead guilty. I think what he said was you're going to get, you're going to get a hundred years. And by, by the way, the judge is sitting there saying that. Agreed. That's threatening. That's a really, I would, yeah, I won't, I won't stand on that point. But, but what I do want to say is it was functionally a life sentence he was facing. Just the nine, 24 C counts alone would have been a mandatory 57 year sentence. And how many of those came out of the second agreement? All of them, three, all of them were out of both agreements. All of them were out of both agreements. So how many were there? There were three, nine, 24 C. So those three felony convictions were not in the second agreement. Four in the first one. Four in the first. He was able to. They weren't in the first either. They weren't in the first or the second. The only difference between the first and the second in terms of the counts was that he pled to, he was going to plead to all six of the bank robberies in the first and only four of the six. So he pled, you got two bank robberies dropped out. That's right. So there's, and they, they each carry what, 20 years? Up to 20. Yeah. Thank you very much. We appreciate you. Thank you. And we just ask that if the court looks at these, these factors in Sanya, that it concludes that it should affirm under the plain air standard. Thank you. Yeah, you don't have to talk, but you can. Um, the, the only, uh, the only thing I wanted to mention, uh, was, uh, the, the court talked about in Sonia that in, in the remand of Davila, Davila two, uh, the, the court looked at the wrong standard that when, when the case was, was looked at a remand, it looked at, at almost a buck four standard in, in terms of the, uh, impact of the judge's statements. And I think the question we need to look at is, did what the judge said have an impact on this plea? Not, was it the cause? And I think that addresses that, that time period that did the time period genuinely. I think the question is, was the time period a genuine cooling off period to the point where the judges, the fact of going before the same judge was going to not matter in clean in pleading guilty or, or was it? And I think that, and that's really all I wanted to, to, to say in response is that it's, it's, it's asked that the court be careful not to create a, a buck four that, you know, in other words, there was a causal chain where other things came in between rather than it was a substantial factor in his guilty plea. Thank you very much. Um, Mr. White, I understand that your court appointed, we very much appreciate your service to the court. We couldn't do it without you. Uh, we'll come down and greet the lawyers and then go directly to our next case. Thank you.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker